**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Lourdes Morales, | No. CV-21-01668-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Maria Lourdes Morales's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (Doc. 1). The appeal is fully briefed (Doc. 19, Doc. 22, Doc. 23). The Court will now rule.

## I.    BACKGROUND

The issues presented on appeal are whether the Administrative Law Judge ("ALJ") erred in his "Step 2" analysis, and whether he did not fully consider all of the evidence relating to Plaintiff's depression in determining her Residual Functional Capacity ("RFC"). (Doc 16-3).

### a.  Factual Overview

Plaintiff left the workforce in March of 2014 citing health issues and depression, as well as issues with coworkers. (*See* Doc. 16-3 at 40–41). Five years later, in 2019, Plaintiff filed an application for DIB and SSI, citing a disability that began in 2014. (*See* Doc. 16-

3 at 18). She claimed to suffer from diabetes, hypertension, psoriasis, rheumatoid arthritis, psoriatic arthritis, immune system condition, chronic leg pain, chronic kidney disease, and Major Depressive Disorder. (Doc. 19 at 3). Both applications were denied in May of 2019, and again denied upon reconsideration in July of that year. (Doc. 16-3 at 18). In 2020, she had a telephonic hearing before an ALJ who also denied her claim. (*Id.* at 18). The SSA Appeals Council then denied her request for a review of that decision and adopted the ALJ's decision as the final decision of the Commissioner. (*Id.* at 2). She now appeals the ALJ's determination on the severity of her depression.

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.

1    *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual

2    functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a

3    claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the

4    claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related

5    symptoms, such as pain, [that] may cause physical and mental limitations that affect what

6    [the claimant] can do in a work setting." *Id.*

7        At the fourth step, the ALJ uses the RFC to determine whether the claimant can still

8    perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the

9    claimant's RFC with the physical and mental demands of the claimant's past relevant work.

10   *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find

11   that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

12       At the fifth and final step, the ALJ determines whether—considering the claimant's

13   RFC, age, education, and work experience—she "can make an adjustment to other work."

14   *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other

15   work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make

16   an adjustment to other work, then the claimant is disabled. *Id.*

17                    **c.  The ALJ's Application of the Factors**

18       Applying the first step, the ALJ found that Plaintiff had not engaged in substantial

19   gainful activity since the date she claimed her disability began. (Doc. 16-3 at 21).

20       At the second step, the ALJ found that Plaintiff had three severe impairments under

21   20 C.F.R. § 416.920(c): Diabetes mellitus, hypertension, and chronic kidney disease. (*Id.*).

22   The ALJ determined that Plaintiff's other impairments, including depression, were non-

23   severe. (*Id.* at 22–23). Although he acknowledged that the depression was a medically

24   determinable mental impairment, he found that it "does not cause more than minimal

25   limitation in the claimant's ability to perform basic mental work activities ...." (*Id.* at 23).

26   Thus, it did not constitute a severe impairment. (*See id.*).

27       At the third step, the ALJ found that Plaintiff did not have "an impairment or

28   combination of impairments that meets or medically equals the severity of one of the listed

1   impairments ...." (*Id.* at 25). The ALJ then examined the record, as well as the evidence

2   from the various physicians that treated her or assessed her case record, and determined

3   her RFC. He found that Plaintiff does not have "a severe mental health disorder, and has

4   no mental limitations." (*Id.* at 28). He thought the assessment from her treating physician,

5   which stated that that Plaintiff would be off-task twenty-five percent in a typical workday

6   and could only maintain attention and concentration for less than five minutes, was "overly

7   restrictive" and "not supported by or consistent with the medical evidence of record ...."

8   (*Id.*).

9           Finally, applying the fourth step, the ALJ found that Plaintiff's RFC would allow

10   her to perform her past relevant work as an office manager. (*Id.* at 29). Because of this

11   finding, he did not apply the fifth step. (*See id.*). He ultimately determined that Plaintiff

12   was not disabled for purposes of SSI or DIB. (*See id.*).

13   **II.     LEGAL STANDARD**

14           This Court may not overturn the ALJ's denial of disability benefits absent legal error

15   or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

16   Substantial evidence means "More than a Scintilla ... but less than a preponderance."

17   *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations omitted). It is

18   "such relevant evidence as a reasonable mind might accept as adequate to support a

19   conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v.

20   Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Under this standard,

21   courts look at "an existing administrative record and ask[] whether it contains sufficient

22   evidence to support the [ALJ's] ... factual determinations." *Biestek v. Berryhill*, 139 S.Ct.

23   1148, 1154 (2019). This Court "must consider the entire record as a whole, weighing both

24   the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and

25   may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting

26   *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws

27   inferences, resolves conflicts in medical testimony, and determines credibility, however.

28   *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d

1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

Oftentimes, the ALJ's decision is based on the weight the ALJ gives to evidence from physicians. In deciding whether these determinations were made appropriately, the Court must assess whether the ALJ complied with the 2017 revised rules for evaluating medical evidence. *See* 20 C.F.R. § 404.1520c. Prior to the 2017 revision, the rules required ALJs to give greater weight to the opinions of treating physicians over those of non-treating physicians. *Woods v. Kijakazi*, 32 F.3d 2022, 791 (9th Cir. 2022). The revised rules did away with this relationship-based assessment of physician evidence, and replaced it with a standard based around the supportability and consistency of that evidence. *See id.*; 20 C.F.R. § 404.1520c(a). They require ALJs to consider five factors: 1. The supportability of the medical opinions, 2. how consistent the medical opinions are with evidence from both medical and non-medical sources in the claim, 3. the relationship between the medical source and the claimant, 4. whether the physician specializes in the types of disabilities involved in the claim, and 5. other general factors that either support or contradict that medical opinion. *See* 20 C.F.R. § 404.1520c(c).

This new set of factors makes sense under the plain text of the Social Security Act. In order for a person to be considered disabled under the Act, he must present "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which shows the existence of a medical impairment ..." 42 U.S.C. § 423(d)(5)(A). It also states that "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... *must* be considered in reaching a conclusion as to whether the individual is under a disability." *Id.* (emphasis added). The focus of the inquiry set forth in the Act is on the accuracy and credibility of the medical opinions. The scientific quality of the evidence is its benchmark. The Act does

1    not focus the inquiry on whether the physician is a treating physician or on the specific role

2    he has. Thus, a rule that centers on supportability and consistency fits more closely with

3    the text of the Act.

4         ALJs are also required to make credibility determinations related to a claimant's

5    testimony. To undertake this analysis, the ALJ must engage in a two-part inquiry. First, he

6    must see whether there is "objective medical evidence of an underlying impairment which

7    could reasonably be expected to produce the pain or other symptoms alleged[.]" *See*

8    *Smolen*, 80 F.3d at 1281. Second, the ALJ must evaluate evidence relating to the intensity,

9    persistence, and limiting effects of the alleged symptoms. *See* 20 C.F.R. § 404.1529.

10   Notably, the claimant does not need to produce "objective medical evidence of the pain"

11   itself or of the causal relationship between the medically determinable impairment and the

12   symptom." *Smolen*, 80 F.3d at 1282. Furthermore, the claimant does not need to show that

13   the alleged impairment "could reasonably be expected to cause the severity of the

14   symptom," only that it could reasonably "have caused some degree of the symptom." *Id.*

15   If this two-part standard is met by the claimant, then the ALJ can only reject testimony

16   about the severity of the symptoms if he provides "specific, clear and convincing reasons

17   for doing so." *Id.* at 1281.

18   **III.    DISCUSSION**

19        Plaintiff claims that the ALJ failed, at Step Two of the analysis, to find that

20   Plaintiff's depression was a severe mental limitation. (Doc. 19 at 9). She asserts that the

21   ALJ did not adequately credit certain findings related to the severity of her depression. (*See*

22   *id.* at 10). She also states that he ignored her and her treatment provider's testimony. (*See*

23   *id.* at 11–12). Additionally, she mentions that the ALJ did not consider all of the effects of

24   her impairments in the RFC. (*See id.* at 8).

25        **a.  Step Two Analysis**

26        Plaintiff claims that the ALJ erred in his determination that her depression was not

27   "severe" at Step Two of the disability analysis. (*See* Doc. 19 at 9). This Court finds,

28   however, that the ALJ's decision should be upheld. While there is evidence to suggest that

1    Plaintiff's depression constitutes a significant limitation, there is also conflicting evidence

2    that it does not. Because the evidence here is "susceptible to more than one rational

3    interpretation" the ALJ's decision will be upheld. *Orn v. Astrue*, 495 F.3d 625, 630 (9th

4    Cir. 2007).

5           In assessing the severity of mental impairments, the rules require ALJs to test

6    Plaintiff's abilities in "four broad functional areas ...." 20 C.F.R. § 404.1520a(c)(3). These

7    areas are understanding, remembering, and applying information; interacting with others;

8    concentrating, persisting, or maintaining pace; and adapting and managing oneself. *See id.*

9    The ALJ applied these and found that Plaintiff's depression was not "severe." (*See* Doc.

10   16-3 at 23). Under the first factor, the ALJ found that there was no evidence that Plaintiff

11   had issues understanding, remembering, or applying information. (*See id.* at 23). To the

12   contrary, Plaintiff's past medical evaluations showed that her thought process was "logical,

13   relevant, coherent, not circumstantial, no flight of ideas, no loose associations, [and] not

14   tangential." (*See* Doc. 16-26 at 48). Further, she was found to have intact cognition, insight,

15   and judgment. (*See id.*). Under the second factor, the ALJ found that there was, again, no

16   evidence suggesting that she had difficulties in this area. (*See* Doc. 16-3 at 23). Although

17   there was evidence that she had a breakdown at work, nothing in the record indicates that

18   this occurred because of an interaction with others. (*See id.*). Under the third factor, the

19   ALJ found that Plaintiff had no issue because there was a lack of evidence and no objective

20   testing to substantiate claims that she lacked concentration. (*See id.*). Finally, under the

21   fourth factor, the ALJ determined that Plaintiff had no issues. (*See id.*). The ALJ noted that

22   she was medication compliant and did not have any exceptional difficulty in grooming or

23   taking medication. (*See id.*). Additionally, the ALJ highlighted the fact that Plaintiff has

24   had little mental health treatment. (*See id.*). Thus, while her depression was a medically

25   determinable impairment, it was not severe. (*See id.*).

26          Plaintiff responds that there is evidence throughout the record corroborating her

27   testimony about the severity of her depression and the associated effects. (*See* Doc. 19 at

28   10). She accuses the ALJ of relying on "cherry-picked" evidence while ignoring evidence

1 that it was "difficult for her to manage her daily routine[,]" that she had sleeping problems,

2 and had a lack of concentration and focus. (*Id.* at 4). She also states that the evidence does

3 show that she has difficulty interacting with others, pointing to an instance when she

4 "yelled and argued with a coworker or supervisor" and evidence of her "self-isolating

5 behaviors[.]" (*Id.* at 11). Plaintiff also discusses evidence that shows she "would be 'off

6 task' more than twenty-five percent of a standard workday due to her conditions[.]" (*Id.* at

7 12). Furthermore, she states that she has other conditions that cause her pain and lead her

8 to lose focus. (*See id.*). Finally, she points to statements that she made regarding the fact

9 that she lays in bed for days and that her daughter has to get her out. (*See id.* at 13). This,

10 she maintains, shows that she does have difficulties adapting and managing herself. (*See*

11 *id.*).

12          Although the record does contain evidence showing that Plaintiff has difficulties

13 across all four functional criteria, there is also evidence that shows that her depression is

14 not a limitation. Even if this Court might have found for Plaintiff had it heard the case first,

15 that is not the standard on appeal. If the evidence is susceptible to more than one "rational

16 interpretation" then this Court must uphold the ALJ's decision. *Orn*, 495 F.3d at 630. The

17 evidence relied upon by the ALJ, and other evidence in the record, could reasonably be

18 interpreted to show that Plaintiff was not impaired, let alone severely impaired, by her

19 depression.

20          Numerous reports throughout Plaintiff's medical record indicate that while she does

21 suffer from depression, it does not limit her to such an extent that it could be considered

22 "severe" under the Social Security Act. Her doctors frequently note that her "judgment and

23 thought content [are] normal[,]" that her "thought content is not paranoid and not

24 delusional[,]" and that, at times, her depressed mood was improving. (*See* Doc. 16-8 at

25 109; Doc. 16-10 at 17; Doc. 16-11 at 32). Additionally, her records note that she is "alert,

26 oriented to person, place, date, situation, and time" and that her cognition is intact. (Doc.

27 16-26 at 55). She also does not experience psychosis. (*Id* at 18). One report stated that she

28 had "no hallucinations, delusions, or pressured speech." (Doc. 16-25 at 33).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Given this evidence, the ALJ found that Plaintiff's depression was non-severe. He stated "Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere ...." (Doc. 16-3 at 24). Looking at the entire administrative record, there is enough evidence to support the ALJ's determination. *Biestek*, 139 S.Ct. at 1154. And the evidence available "admits of more than one rational interpretation." *Allen*, 749 F.2d at 579. Consequently, this Court must affirm the ALJ's decision.

### b. Credibility of Plaintiff's testimony

Plaintiff also asserts that the ALJ did not give proper weight to her testimony and cherry-picked evidence to support his determination. (*See* Doc. 19 at 11–13). This Court finds, however, that the ALJ gave appropriate weight to Plaintiff's testimony and made appropriate credibility determinations. The ALJ did find that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms ..." (Doc. 16-3 at 26). Thus, Plaintiff met the first step of the test described in *Smolen*. *See Smolen*, 80 F.3d at 1281–82. Her testimony did not, however, meet the second step. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were inconsistent with other evidence in the record. (Doc. 16-3 at 26). He specifically noted, first, that

> although the claimant has received treatment for the allegedly disabling impairments, the treatment had been routine and/or conservative in nature. Next, the clinical findings of the examining medical sources fail to corroborate the claimant's allegations of disabling functional limitations. Third, objective imaging and laboratory tests are consistent with the residual functional capacity.

(*Id.*). He did, then, consider the evidence she presented about the severity of her symptoms. But he found it to be non-credible. He noted that her claims of debilitating depression were inconsistent with opinions provided by state agency medical and psychological consultants who found that she "did not have a severe mental health disorder, and had no mental

1  limitations." (*Id.* at 28). An ALJ "is not required to believe every allegation of disabling

2  pain or other non-exertional impairment." *Orn*, 495 F.3d at 635. Because he provided

3  specific, clear, and convincing reasons for his disbelief he was justified in discrediting

4  Plaintiff's testimony.

5                  **c.  Testimony of Plaintiff's treatment provider**

6          Plaintiff also mentions that the ALJ overlooked the testimony of her treatment

7  provider. (*See* Doc. 19 at 12). This Court again finds that the testimony was not overlooked

8  but was appropriately found to be unpersuasive. Turning to the five factors set forth in the

9  post-2017 physician credibility rule, the ALJ found that the treating physician's testimony

10  was not at all persuasive. He first pointed to Plaintiff's numerous other mental status exams

11  that found her to be normal and not severely impaired. (*See* Doc. 16-3 at 28). Thus, he

12  found the treating physician's determination that she was impaired to be neither supported

13  by nor consistent with the other evidence. (*Id.*). He also noted that the Plaintiff was a new

14  patient when the physician conducted the exam that provided the basis for his testimony,

15  and that he was physician in training at the time. (*Id.*). All of these factors, combined with

16  the fact that his opinion was "overly restrictive[,]" led the ALJ to give little weight to the

17  opinion. Resolving conflicts in medical testimony is the province of the ALJ. *See Andrews*

18  *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (The ALJ is responsible for resolving

19  conflicts in medical testimony, determining credibility, and resolving ambiguities.). A

20  reviewing court will uphold those determinations as long as the ALJ acted appropriately

21  and according to the rules when making them. Thus, this Court will uphold his

22  determination.

23                  **d.  RFC determination**

24          Plaintiff also briefly mentions that there were issues with the ALJs determination of

25  her RFC. (*See* Doc. 19 at 8). In determining an RFC, the ALJ must consider not only those

26  impairments that are "severe" under the Act, but also all of a claimant's other impairments.

27  *Garrison*, 759 F.3d at 1011. This includes "claimant's subjective experiences of pain" *Id.*;

28  20 C.F.R. § 416.920. This Court finds that the ALJ determined Plaintiff's RFC accurately.

As discussed above, the ALJ looked at the evidence in the record relating to Plaintiff's depression. He found that most of her evaluations found her to be functioning normally. Furthermore, he did not find Plaintiff's testimony or that of her treatment provider persuasive because it was contradicted by a large amount of evidence elsewhere in the record. Therefore, even considering her depression in conjunction with her other medically determinable impairments, her symptoms were not disabling enough for the ALJ to find that she could not do her previous job. (*See* Doc. 16-3 at 11–12). This Court finds no issue with this assessment.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 14th day of February, 2023.

James A. Teilborg
Senior United States District Judge